DIN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| V. | ) Case No. 6:17CR00010-002 |
| | ) |
| CHRISTOPHER WILLIAM LANTRIP, | ) |
|     Defendant. | ) |

**SENTENCING MEMORANDUM**

Christopher William Lantrip has pleaded guilty to conspiracy to distribute 50 grams or more of methamphetamine. Although he was charged with a 500-gram conspiracy, the United States moved that he be convicted of the lesser included offense involving the lower weight.

After considering all the circumstances of this case, the history and characteristics of Mr. Lantrip, and the goals of sentencing, we submit that the Court will find that to sentence him within the Guidelines' range would be unnecessary and unreasonable. A review of the factors set forth in 18 U.S.C. Section 3553(a) makes it clear that a downward variance to a sentence of 60 to 84 months is "sufficient but not greater than necessary," to comply with the purposes contained in paragraph (2) of 18 U.S.C. 3553(a).

**I. SENTENCING GUIDELINES**

The Guidelines' Range for Mr. Lantrip is 130 to 162 months. This is based on a total offense level of 27 and a criminal history category of VI.

1

## II. 18 U.S.C. Section 3553(a) FACTORS

### A. History and Characteristics of Mr. Lantrip

#### 1. Social History

A review of Mr. Lantrip's life shows that it is no surprise that he finds himself in this situation. The forensic evaluation conducted by the Bureau of Prisons as well as the pre-sentence report paint a grim picture of Mr. Lantrip's youth. His father was an abusive alcoholic who was physically and emotionally abusive to his mother, his siblings and himself. Mr. Lantrip describes his mother as "a great woman" who is very supportive of him. However, during his developmental years she was "never around" as she had to work three jobs to make ends meet. On one occasion, his father beat Lantrip to the point that it was noticeable at school. His gym teacher noticed the boot print on Lantrip's back and called social services. In short, his life was very tumultuous and resulted in drug and alcohol addiction.

Lantrip married the mother of his children in 2012. Their relationship had a history of drug use by both parties and was volatile. The pre-sentence report indicates that both parties have convictions for violations of protective orders and other offenses. They had three children, a seven-year-old girl and six-year-old twins. After his first child was born, Mr. Lantrip was doing well. He was not using cocaine, established a restaurant business, and was fixing up a house for his family. However, prior to the current offense, Mr. Lantrip learned that the seven-year-old is not his biological child. Mr. Lantrip relapsed. The couple is now going threw a divorce. Currently, Mr. Lantrip's mother has custody of the twins and Mr. Lantrip enjoys a good relationship with them as well as his seven-year-old.

As might be expected given his upbringing, Mr. Lantrip has a long history of drug and alcohol abuse. He first drank alcohol when he was 11 and has had a history of alcohol ever since, drinking up to a liter of alcohol a day. He abused cocaine, crack, methamphetamine, and marijuana. He first used cocaine at age 12 and crack at age 14. He switched to methamphetamine in 2016 and "it gripped him."

## 2. Mental Health

The Bureau of Prisons' e\Evaluation established that Mr. Lantrip's intellectual functioning is either in the Borderline or Low Average range, depending on the test. This is supported by his educational history which indicates he was in special education classes and in alternative schools. He graduated high school with a special diploma.

According to the Evaluation, Mr. Lantrip suffers from Generalized Anxiety Disorder, Moderate Persistent Depressive Disorder, Severe Opioid use Disorder, Severe Amphetamine-type Substance Use Disorder, and Severe Alcohol Use Disorder.

Fortunately, according to the evaluator, he will benefit from pharmacological treatments, in conjunction with psychotherapy, including Cognitive Behavioral Therapy. The evaluator indicted that Mr. Lantrip was forthcoming and cooperative with the evaluator and staff at the MDC-LA which indicated the potential for a good therapeutic outcome. The evaluator further reported that Mr. Lantrip reported an interest and desire to treat his mental health symptoms and a desire to make changes.

### 3. Criminal History

Although Mr. Lantrip has several criminal convictions, he has no violent felonies or drug trafficking offenses. Some of the convictions are evidence of his alcohol and drug abuse, the possession of a controlled substance offense in paragraph 35, the DUI offense contained in paragraph 36, and the possession of marijuana contained in paragraph 37. Many of the criminal history points reflect the tumultuous relationship Mr. Lantrip had with his wife.

### B. The Nature and Circumstances of the Offense

Mr. Lantrip's relevant conduct does not involve the use of violence, the credible threat of violence, the possession of a weapon, the trafficking of drugs to or with minors, or the death or serious bodily injury of any person. He is not an organizer, leader, manager or supervisor of others within a criminal organization. His role in this offense was clearly less than that of his co-defendant. Indeed, the money he bought to the reverse sting belonged to another offender who had asked Lantrip to deliver the money to his co-defendant to purchase a kilo of methamphetamine. It should also be noted that there were no actual drugs involved in the controlled buy.

### C. To Reflect the Seriousness of the Offense, to Promote Respect for the Law, to Provide Just Punishment for the Offense, to Afford Adequate Deterrence, and To Protect the Public From Further Crimes of the Defendant

Unquestionably, this is a very serious offense. However, a less than Guidelines' sentence of 60 to 84 months is a lengthy sentence that is sufficient but not greater than necessary to achieve these goals of sentencing. Furthermore, the BOP evaluator notes that if Mr. Lantrip addresses his mental health and substance abuse concerns, this may result in a decrease in his tendency to engage in criminal behavior. The residential drug treatment program at the Bureau of Prisons will be a step

toward addressing concerns.

### III. To Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner

While Mr. Lantrip does not need a 130-month prison sentence, he would benefit from a sentence sufficient to provide him with drug and mental health treatment in the Bureau of Prisons. A sentence of 60 to 84 months would be sufficient to allow him to benefit from these programs. As set forth above, this would still be a significant sentence that sufficiently reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense.  It would also afford adequate deterrence to criminal conduct and would protect the public from further crimes of the defendant.

Finally, according to the presentence report it costs the United States $36,300.00 per year to incarcerate Mr. Lantrip.  On the other hand, it costs $4,369.00 for her to be supervised by a probation officer.  A lengthy period of incarceration costing tens of thousands of dollars simply is not pragmatic or necessary.

### IV. The Need to Avoid Unwarranted Sentence Disparities

Mr. Lantrip's co-defendant received a 120-month sentence for Count One. Mr. Lantrip clearly was the less culpable offender in this conspiracy; accordingly, his sentence should reflect this lesser culpability. Thus, a range of 60-84 months would avoid this unwarranted sentencing disparity.

5

## V. Conclusion

Accordingly, for these reasons, Mr. Lantrip submits that a sentence of sixty to eighty-four months is reasonable and sufficient but not greater than necessary to promote the factors in 18 U.S.C. Section 3553.

                                                Respectfully Submitted,
                                                Christopher William Lantrip

                                                By: *Anthony F. Anderson*
                                                    Counsel

Anthony F. Anderson
ANDERSON & FRIEDMAN
1102 Second Street, S. W.
P. O. Box 1525
Roanoke, Virginia   24007
(540) 982-1525
mqwfriedman@afalaw.com
 Counsel for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that this 23rd day of May 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the all counsel of record including Andrew Bassford, AUSA, United States Attorney's Office, P.O. Box 1709, Roanoke, Virginia 24011, andrew.bassford @usdoj.gov.

                                                s/ *Anthony F. Anderson*