**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 6:17-CR-00010-NKM-1 |
| | ) | |
| CHRISTOPHER WILLIAM LANTRIP | ) | |
| | ) | |

### GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

Christopher William Lantrip comes before the Court seeking compassionate release from the remainder of his term of imprisonment. Mr. Lantrip is obese, which is recognized as an extraordinary and compelling reason for his release. Still, Mr. Lantrip's obesity does not overcome the 3553(a) factors and otherwise warrant his release. No modification of his sentence is necessary.

Mr. Lantrip filed his request for appointment of counsel to assist with a compassionate release motion on February 2, 2021. The Court appointed the Federal Public Defender to consider and perhaps supplement Mr. Lantrip's claims. On March 16, 2021, the Federal Public Defender declined to supplement Mr. Lantrip's pro se motion; thus, the United States now responds directly to Mr. Lantrip's motion.

Mr. Lantrip was sentenced on May 30, 2019 to a term of 120 months of incarceration based on his conviction of conspiracy to distribute 50 grams or more of methamphetamine. He is currently housed at FCI Gilmer.

### BACKGROUND

Lantrip was involved in the distribution of large amounts of methamphetamine into

Bedford County in 2017. He had previously been convicted of possession of cocaine in 2007 and felony destruction of property in 2017. At the time of the offense, Lantrip agreed to speak to law enforcement and admitted that he was purchasing methamphetamine in order to distribute it. ECF 117. He pleaded guilty on January 15, 2019 and was sentenced on May 30, 2019. ECF 117. The Court imposed a sentence of 120 months. *Id.*

Although, in his pro se motion, Mr. Lantrip states that he has "exhausted all remedies with the Warden," there is nothing in the record, or otherwise, to suggest that Lantrip has actually requested an administrative reduction in sentence from the Warden. ECF 127. If true, this fact would make the instant filing premature, and subject this filing to dismissal without prejudice.

Lantrip's current projected release date with good conduct time is January 12, 2026.

## BOP RESPONSE TO COVID-19 OUTBREAK

Lantrip is concerned that the Bureau of Prisons will not be able to again protect his health and wellbeing during the COVID pandemic, and so he should be released. However, BOP has taken aggressive steps to protect inmates' health and limit the spread of COVID-19 in its facilities. BOP COVID-19 Action Plan (March 13, 2020), www.bop.gov/resources/news/20200313_covid-19.jsp;  BOP COVID-19 Coronavirus, www.bop.gov/coronavirus/index.jsp  (updated regularly). BOP modified operations by regularly screening inmates and staff, suspending social visits and tours, limiting in-person legal visits, limiting inmate movement, and maximizing social distancing. https://www.bop.gov/coronavirus/covid19_status.jsp. As BOP progresses in its Action Plan, it has restored some aspects of normal operations.

BOP is devoting all available resources to transfer inmates to home confinement in appropriate circumstances when those inmates are particularly vulnerable to adverse outcomes from COVID-19 under the Centers for Disease Control and Prevention risk factors. Mem. from

Attorney General to Director of BOP (Mar. 26, 2020), *available at* https://dojnet.doj.gov/usao/eousa/ole/tables/misc/aghome.pdf; Mem. from Attorney General to BOP Dir. (Apr. 3, 2020), *available at* https://dojnet.doj.gov/usao/eousa/ole/tables/misc/agcovid2.pdf. In determining which inmates would be appropriate candidates for home confinement, BOP must assess several discretionary factors:

- The age and vulnerability of the inmate to COVID-10, in accordance with the CDC guidelines;

- The security level of the facility currently holding the inmate, with priority given to inmates residing in low and minimum security facilities;

- The inmate's conduct in prison, with inmates who have engaged in violent or gang-related activity in prison or who have incurred a BOP violation within the last year not receiving priority treatment;

- The inmate's score under PATTERN, with inmates who have anything above a minimum score not receiving priority treatment;

- Whether the inmate has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety, including verification the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face in his or her BOP facility;

- The inmate's crime of conviction, and assessment of the danger posed by the inmate to the community; some offenses, such as sex offenses, render an inmate ineligible for home detention.

Mem. from Attorney General to Director of BOP (Mar. 26, 2020) at 1-2, *available at* https://dojnet.doj.gov/usao/eousa/ole/tables/misc/aghome.pdf. As of this writing, BOP has transferred 21,940 inmates to home confinement. https://www.bop.gov/coronavirus/index.jsp (last visited March 17, 2021).

BOP has begun administering vaccines to inmates. Information on BOP's vaccination efforts will soon be available on bop.gov. Based on current available data from the CDC, BOP has distributed 81,950 doses of the vaccine. COVID-19 Vaccinations in the United States, Ctrs. for

Disease Control and Prevention, https://covid.cdc.gov/covid-data-tracker/#vaccinations (last updated March 16, 2021).

## ARGUMENT

The compassionate release statute, as amended by the First Step Act on December 21, 2018, provides:

> [The] court may not modify a term of imprisonment once it has been imposed except . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds . . . extraordinary and compelling reasons warrant such a reduction [and] such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

In general, the Defendant has the burden to show the "rare" and "extraordinary" circumstances meeting the test for compassionate release. *See United States v. Brewington*, 2019 WL 3317972, at *2 (W.D. Va. July 24, 2019) (Jones, J.); *United States v. Willis*, 2019 WL 2403192, at *3 (D.N.M. June 7, 2019); *United States v. Gutierrez*, 2019 WL1472320, at *2 (D.N.M. Apr. 3, 2019). Although the Fourth Circuit recently held the policy statement found in U.S.S.G. § 1B1.13 does not apply to compassionate release motions brought by inmates under 18 U.S.C. § 3582(c)(1)(A)(i), the policy statement remains "helpful guidance even when motions are filed by defendants." *United States v. McCoy*, 981 F.3d 271, 282 n.7 (4th Cir. 2020); *see also United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) (explaining that § 1B1.13 remains useful in framing a court's inquiry as to what constitutes "extraordinary and compelling reasons"). "[A] judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused. In this way the Commission's analysis can guide discretion without being conclusive." *Id*. (citing *Gall v. United States*, 552 U.S. 38, 49–50 (2007); *Kimbrough v. United*

*States*, 552 U.S. 85 (2007)). Thus, although *McCoy* broadened district courts' discretion under § 3582(c)(1)(A), it nonetheless appeared to envision a system whereby courts remain confined within a traditional discretionary framework.

### 1. The Government Contests Exhaustion of Administrative Remedies.

Lantrip does not appear to have submitted any administrative requests to the Warden for reduction of sentence. As such, he has not exhausted his administrative remedies. The exhaustion requirement is "mandatory." *United States v. Carr*, 2020 WL 2847633 at *4 (W.D. Va. June 2, 2020) (Jones, J.). It must be enforced if a party "properly raise[s]" it. *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (holding Fed. R. Crim. P. 33 is non-jurisdictional but a mandatory claim-processing rule); *see also Hamer v. Neighb'd Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017) (when "properly invoked," mandatory claim-processing rules "must be enforced"). Failure to exhaust is a "glaring roadblock foreclosing compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *United States v. Alam*, No 20-1298, at 7 (6th Cir. June 2, 2020). The result of failure to exhaust would be dismissal without prejudice, and if the Court finds that there has been a failure to exhaust, it need not consider the following arguments on the merits.

### 2. Lantrip's obesity presents an "extraordinary and compelling" reason under application note 1(a) to the Sentencing Guidelines policy statement.

The CDC has identified the following underlying medical conditions as placing individuals at higher risk for severe illness if they contract COVID-19: (1) cancer; (2) chronic kidney disease; (3) COPD; (4) down syndrome; (5) heart conditions; (6) immunocompromised state; (7) obesity (body mass index (BMI) of 30 to 40; (8) severe obesity (BMI of 40 or higher); (9) pregnancy; (10) sickle cell disease; (11) smoking; and (12) type 2 diabetes. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited 1/7/21).

The CDC has added a separate list of conditions for which there are insufficient data to conclude anything more than that these conditions <u>might</u> increase the risk of severe illness from COVID-19: Asthma (moderate-to-severe); Cerebrovascular disease (affects blood vessels and blood supply to the brain); Cystic fibrosis; Hypertension or high blood pressure; Immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines; Neurologic conditions, such as dementia; Liver disease; Overweight (BMI over 25 but under 30); Pulmonary fibrosis (having damaged or scarred lung tissues); Thalassemia (a type of blood disorder); Type 1 diabetes mellitus. *Id.* A condition on the CDC's list of conditions that *might* increase risk does not by itself qualify as an extraordinary and compelling reason that would permit consideration for compassionate release. The full collection of circumstances must always be individually assessed, and the defendant has the burden to show the "rare" and "extraordinary" circumstances meeting the test for compassionate release. *See United States v. Brewington*, 2019 WL 3317972, at *2 (W.D. Va. July 24, 2019) (Jones, J.);[1] *United States v. Willis*, 2019 WL 2403192, at *3 (D.N.M. June 7, 2019); *United States v. Gutierrez*, 2019 WL1472320, at *2 (D.N.M. Apr. 3, 2019).

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides, in part, that the "court may not modify a term of imprisonment once it has been imposed except that . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." These policy statements

---

[1] Internal quotation marks and citations omitted throughout.

provide medical conditions can, alone, prove sufficiently extraordinary and compelling to justify a sentence modification. U.S.S.G. § 1B1.13, application note 1(A)-(B), (D).

Lantrip's medical records indicate that he suffers from obesity, with a BMI of 32.2. Obesity is a CDC-recognized factor. Any BMI over 30 is considered obese. Lantrip has not made any assertion that his conditions render him incapable of self-care in a BOP facility, but the Government recognizes that Lantrip's obesity, in light of the COVID-19 pandemic, has been identified as an extraordinary and compelling reason for release.

BOP medical records indicate Lantrip is receiving thorough and appropriate care at the FCI Gilmer facility. He receives regular treatment and consultations as necessary to manage his conditions. Nothing in the BOP medical records indicates his conditions are extraordinary, nor that BOP is unable to adequately care or treat his routine conditions.

But the analysis does not end with a simple consideration of Lantrip's medical situation; we must also examine the § 3553(a) factors. They establish that Lantrip should not be released.

3.     **The § 3553(a) Factors Weigh Strongly Against a Sentence Reduction.**

The compassionate release statute under which Lantrip moves for release, 18 U.S.C. § 3582(c)(1)(A), requires the Court to consider the factors set forth in § 3553(a). Those factors include: the nature and circumstances of the offense and the history and characteristics of the Defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a).

These § 3553(a) factors do not support Lantrip's release. Lantrip was directly and personally involved in the distribution of very large amounts of methamphetamine. This is

dangerous conduct, which requires just punishment. BOP classified Lantrip as having a medium security classification and a high risk of recidivism. All of this compels his continued incarceration on grounds of incapacitation and deterrence.

It is further worth noting that Mr. Lantrip has not stayed out of trouble during his brief time in BOP custody. Prior to his plea and sentencing, Mr. Lantrip was in BOP custody in 2018 for the purposes of evaluation. During that time, Mr. Lantrip was sanctioned twice for accepting money and once for interrupting a phone call. Less than three months after his sentencing, in August 2019, Mr. Lantrip refused to return to his unit and incurred sanctions.

Releasing him before he has completed his sentence would be to cause the commandments of § 3553(a) to be superseded by the fact that Lantrip is slightly obese – a condition for which he not only bears some responsibility, but one that he can also positively impact on his own, at any time, if he so chooses. It is actually possible to lose weight, even if you are in federal prison. The government is sure that the medical staff supporting Mr. Lantrip would be happy to put him on a program that would help him do just that. In fact, Mr. Lantrip's medical records indicate that the provider at FCI Gilmer counseled Mr. Lantrip about the importance of diet and exercise on November 17, 2020. On that same date, Mr. Lantrip stated that he had been losing weight and was "Down from 225 pounds." It may be that obesity is a factor that makes COVID more dangerous, but nowhere is it written that a Defendant can't take responsibility for his own health by losing weight, thereby doing something on his own to improve his own situation.

Viewing his case holistically, and with an individualized consideration of Mr. Lantrip, there are limited reasons to grant Mr. Lantrip early release, but plenty of reasons why his request should be denied.

## CONCLUSION

Viewing the record as a whole, while Mr. Lantrip's obesity acts as an extraordinary and compelling circumstance, it does not outweigh the problems posed by his history of recidivism, his recent disciplinary record, and his moderate security level. Therefore, consideration of his § 3553(a) factors outweigh his reasons for release. For the foregoing reasons, the Government respectfully requests the Court deny the motion.

Respectfully submitted,

DANIEL P. BUBAR
Acting United States Attorney

Date:  March 19, 2021

*/s/ Mary Margaret Cleary*
Mary Margaret Cleary
Assistant United States Attorney
Virginia State Bar No. 92882
P. O. Box 1709
Roanoke, VA  24008-1709
Telephone:  (540) 857-2250
Facsimile:  (540) 857-1614
E-mail:  Maggie.Cleary@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2021, I caused a true copy of the foregoing Government's Response in Opposition to Defendant's Motion for Compassionate Release to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide electronic notice to all counsel of record.

*/s/ Mary Margaret Cleary*
Mary Margaret Cleary
Assistant United States Attorney